**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**ENPAT, INC.,**

        **Plaintiff,**

**v.**    Case No:   6:13-cv-948-Orl-31KRS

**TENROX INC.,**

        **Defendant.**

## ORDER

This matter comes before the Court after a *Markman* hearing and review of the parties' briefs (Doc. 30, 32) and responses (Doc. 34, 36) thereto.

**I.    Background**

Enpat holds U.S. Patent No. RE38,633 (the "'633 Patent"), which is a reissue of U.S. Patent No. 5,548,506 (the "'506 Patent"). The '633 Patent is titled "Automated, Electronic Network Based, Project Management Server System." The inventor behind the '633 and '506 Patents, Seshan R. Srinivasan, assigned his rights to Enpat on April 1, 2004. (Doc. 8 at 3). In broad terms, the '633 Patent covers a software-based system for managing projects automatically, primarily via electronic messages. The '633 Patent includes 51 claims. In its Amended Complaint, Enpat asserts that Tenrox's "Project Plan Software" infringes at least claim 12 of the '633 Patent. (Doc. 8 at 5). Claim 12 of the '633 Patent reads as follows:

> 12.   Apparatus that is automatic in nature and for coordinating management of a project, comprising:
>
> an electronic messaging receiver module;
>
> a project database including allocation of at least one resource between a plurality of project tasks; and

> a resource levelling module with built-in triggers adapted to level allocation of said at least one resource between said plurality of project tasks in response to an electronic message received by said electronic messaging receiver

## II.     Standards

> It has long been understood that a patent must describe the exact scope of an invention and its manufacture to "secure to [the patentee] all to which he is entitled, [and] to apprise the public of what is still open to them." *McClain v. Ortmayer*, 141 U.S. 419, 424, 12 S.Ct. 76, 77, 35 L.Ed. 800 (1891).   Under the modern American system, these objectives are served by two distinct elements of a patent document.   First, it contains a specification describing the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art ... to make and use the same." 35 U.S.C. § 112; *see also* 3 E. Lipscomb, Walker on Patents § 10:1, pp. 183-184 (3d ed. 1985) (Lipscomb) (listing the requirements for a specification). Second, a patent includes one or more "claims," which "particularly poin[t] out and distinctly clai[m] the subject matter which the applicant regards as his invention."   35 U.S.C. § 112.

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996).

A patent infringement analysis involves two steps.   "First, the court determines the scope and meaning of the patent claims asserted … and then the properly construed claims are compared to the allegedly infringing device."   *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (internal citations omitted).   Only the first step is at issue in the instant order.

Claim construction is a question of law.   *Markman*, 517 U.S. at 372.   The Court principally looks to the claims made in the patent, specification, and prosecution history.   *Alza Corp. v. Myland Laboratories, Inc.*, 391 F.3d 1365, 1370 (Fed. Cir. 2004).    There is a heavy presumption that claim terms are to be given their ordinary and customary meaning.   *Aventis Pharms. Inc. v. Amino Chemical Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013).    This "ordinary and customary meaning" of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.   *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).    There are two exceptions to the general rule that claim terms are to be given their ordinary and customary

meanings: (1) when a patentee sets out a definition and acts as his own lexicographer; and (2) when the patentee disavows the full scope of a claim term either in the specification or during the prosecution. *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

**III.   Analysis**

Tenrox seeks construction of five phrases or terms from the '633 Patent. Enpat proposes that each of the five be given their plain and ordinary meaning. Enpat also argues that one of the five is not a limitation and therefore need not be construed. Tenrox proposes alternative constructions for each phrase or term, as discussed below.

    A.   <u>automatic in nature</u>

The phrase "automatic in nature" appears in the preamble of asserted claims 12, 22, 32, and 42. Tenrox asserts that the phrase should be construed to mean "performs without the need for manual intervention or supervision, after initial creation and configuration." (Doc. 30 at 7).[1]

---

[1] Tenrox bases its argument, in part, on a 1997 infringement case in which Enpat asserted the '506 Patent against Microsoft. In that case, the court was called upon by Microsoft to construe the term "automatic." *See Enpat, Inc. v. Microsoft Corp.*, 26 F.Supp.2d 806 (E.D. Va. 1998). The term appeared in the preamble to claim 1, the only independent claim in the '506 Patent. Claim 1 described a method for managing projects and read in pertinent part:

> said method to be automatic in nature and with built in triggers which are based on the nature and status of said data without the need for manual project management coordination, said project management coordination to involve all the steps of the project management cycle including planning, resource leveling, status reporting and reminding, tracking and updating plans.

Microsoft argued that, based on this language, claim 1 was limited to a program that could automatically perform all the steps of the project management cycle without the need for human intervention. *Id.* at 809. The court agreed with this position, stating that the claim "teaches a method that automatically performs all of the steps in the project management cycle, without the need for manual intervention or supervision, based only on messages sent to the computer." *Id.* at 810.

Enpat contends that no construction of this term is needed, as the phrase appears only in the preamble and is not limiting.  Enpat further argues that, if the Court finds that the term must be construed, Tenrox's construction is too narrow.

Whether to treat a preamble term as a limitation is a determination "resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim."  *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.,* 868 F.2d 1251, 1257 (Fed. Cir. 1989).  In general, a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim.  Where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention, the preamble is not a claim limitation.  *STX, LLC v. Brine, Inc.*, 211 F.3d 588, 591 (Fed. Cir. 2000) (citing *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)).  However, clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention.  *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808-09 (Fed. Cir. 2002).

Enpat contends that, because the phrase "automatic in nature" appears only in the preamble of the asserted claims and because it "merely highlights the benefits of the claimed invention," it should not be deemed a limitation of the asserted claims.  (Doc. 32 at 6).  In support of the contention that "automatic in nature" is descriptive rather than essential (and therefore not limiting),

---

Although Tenrox attempts to rely on the opinion in the Microsoft case, it is not of great assistance in resolving the instant dispute.  In addition to the fact that the claim language is different in the instant case, Enpat did not raise the argument, which it asserts here, that the disputed term is not limiting due to its appearance in the preamble of the claim.  Further, the phrase at issue in that case was "automatic," while the parties to this case are disputing the interpretation of the phrase "automatic in nature," which is somewhat different.  Finally, the *Microsoft* court did not construe the term "automatic," standing alone; rather, it assessed the entire claim, based on all of the language of claim 1 and the prosecution history of the '506 Patent.  *See id.*

Enpat argued at the hearing that if the term "were to be deleted from the preamble, then the claimed invention would still be automatic, because the remaining claim language describes an automated process.  (Doc. 42 at 11).   Tenrox has not disputed this contention.

Tenrox argues that the phrase "automatic in nature" was inserted during prosecution to distinguish the '633 Patent from prior art, and that this mandates that the phrase be treated as a claim limitation.  *See Catalina Marketing*, 289 F.3d at 808-09 (listing numerous "guideposts" as to when a preamble limits the scope of a claim, including "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art").  However, this description of the prosecution history is incomplete.  After the patent examiner rejected claims 12-51 as obvious in light of prior art (Doc. 31-1 at 108-112), the applicant added the phrase "automatic in nature and with built-in triggers" in an effort to overcome this rejection (Doc. 31-1 at 126).  The effort was successful, and the obviousness rejection of claims 12-51 was withdrawn.  (Doc. 31-1 at 119).

However, Tenrox offers no evidence or argument that it was the "automatic in nature" portion of the added language that was used to overcome the obviousness rejection (and therefore should be treated as a limitation), rather than the "built-in triggers" portion.  To the contrary, Enpat notes that sometime after the withdrawal of the obviousness rejection, the examiner required the applicant to amend claims 12, 22, 32, and 42 "for the expressed purpose of removing a limitation from the preamble."  (Doc. 32 at 6).[2]  That amendment removed the phrase "and with built-in triggers" from the preamble of the affected claims; the phrase "automatic in nature" remained in the preamble.[3]  This suggests that the examiner considered the "built-in triggers" language to be

---

[2] More specifically, on February 6, 2004, according to the summary of an interview with the patent examiner, the applicant agreed "to amend independent claims 12, 22, 32 and 42 with the limitation taken out of [the] preamble."  (Doc. 32-1 at 1).

[3] For example, prior to the amendment, the pertinent portion of claim 12 read "Apparatus that is automatic in nature and with built-in triggers for coordinating management of a project,

- 5 -

limiting, but not the "automatic in nature" language.  In addition, in discussing why claims 1-9 of the '633 Patent were allowable over the prior art, the examiner stated that "the prior art of record does not teach or fairly suggest the built-in triggers to be invoked by a project management server for leveling resources when an electronic message is received by the server from a client." [4]  (Doc. 31-1 at 121).   The phrase "automatic in nature" was also included in claims 1-9, but the examiner did not even refer to that language, much less identify it as something that distinguished those claims from the prior art.

The Court agrees with Enpat that "automatic in nature" was not considered to be a claim limitation by the examiner and was not relied upon to distinguish claims 12-51 from the prior art.  In addition, as discussed above, the Court finds that claim 12 states a structurally complete invention in the absence of the "automatic in nature" language in the preamble, and therefore that language is not limiting and need not be construed.

B.   resource

The second term at issue is "resource," which is found throughout the specification, figures, and claims of the '633 Patent.   Tenrox contends that "resource" should be construed to mean "work group members."   (Doc. 30 at 7).   Tenrox bases this argument on language found in dependent claims 15, 25, 35, and 45, having to do with electronic messaging from resources.   For example, dependent claim 15 reads as follows:

> 15.   The apparatus according to claim 12, wherein:
>
> Said project database includes allocation of a plurality of resources; and

---

comprising:".   (Doc. 32-2 at 6).   Post-amendment, that portion of claim 12 reads "Apparatus that is automatic in nature and for coordinating management of a project, comprising:".

[4]  At the time the examiner made this statement, claims 12-51 had been rejected on the basis of the recapture rule.

> Said project database is centrally accessible by electronic messaging from each of said plurality of resources.

Because this claim language requires that the database be "accessible by electronic messaging from each of said plurality of resources," Tenrox argues that each resource must be capable of sending electronic messages to the database. Because only work group members (or work team members) are described in the patent as being able to send electronic messages, Tenrox concludes that only work group members can be resources.

Tenrox's proposed construction is contradicted by the plain language of the '633 Patent, which at numerous points refers to "resources" that are incapable of sending electronic messages, such as Fig. 3, the project database example, which utilizes "feet of copper pipe" as a resource. In addition, the proposed construction runs afoul of the doctrine of claim differentiation, which provides that the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim. *See, e.g., Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004). Claim 15 introduces two limitations to independent claim 12: first, that a plurality of resources is required (rather than the "at least one resource" required by claim 12), and second, that the plurality of resources must be able to access the project database via electronic messaging. Adopting Tenrox's proposed construction of "resource" would result in this latter limitation -- that resources be able to access the database via electronic messages -- being read back into the independent claims.

The presumption raised by the doctrine of claim differentiation may be overcome if the circumstances suggest a different explanation, or if the evidence favoring a different claim construction is strong, *Liebel-Flarsheim* at 910, but Tenrox has not overcome this presumption by, for example, offering an explanation as to why the "accessible by electronic messaging from each of

said plurality of resources" language is found in the dependent claims but not the independent claims. "Resource" will be given its plain and ordinary meaning.

      C.    <u>resource leveling module with built-in triggers adapted to level allocation</u> and <u>leveling allocation of said at least one resource between said plurality of project tasks with built-in triggers</u>

Tenrox makes similar arguments in regard to these two phrases, each of which is found in two independent claims. Therefore the Court will consider them together.

Tenrox contends that the phrase "resource leveling module with built-in triggers adapted to level allocation," which is found in independent claims 12 and 22, should be interpreted to mean "a module that reallocates at least one resource between two or more projects or project tasks *based on predefined criteria, including at least project or project task priority*." (Doc. 30 at 7) (emphasis added). As for the second phrase -- "leveling allocation of said at least one resource between said plurality of project tasks with built-in triggers" – which is found in independent claims 32 and 42, Tenrox proposes the following construction: "reallocating at least one resource between two or more projects or project tasks *based on predefined criteria, including at least project or task priority*." (Doc. 30 at 7) (emphasis added).[5] Aside from the highlighted phrases, Tenrox's proposed constructions are simply restatements of the claims' existing language.

As to those highlighted phrases, the doctrine of claim differentiation precludes Tenrox's proposed construction. Dependent claims 14, 24, 34, and 44 include the limitation that Tenrox seeks to include in independent claims 12, 22, 32, and 42. As an example, dependent claim 14 reads as follows:

---

[5] Tenrox also argues that, if the Court determines that the "automatic in nature" language found in the preambles of these claims is not limiting, the prosecution history requires that the phrase "without any manual intervention or supervision" be inserted into both phrases. (Doc. 30 at 19). Without belaboring the point, the Court rejects this proposed construction for the same reason it rejected Tenrox's contention that the "automatic in nature" language was necessary to overcome prior art.

>  14.  The apparatus according to claim 12 wherein:
>
>  Said resource leveling module allocates said at least one resource in accordance with priorities assigned to each of said plurality of project tasks.

The only meaningful difference between claim 12 and claim 14 is that the resource allocation is done "in accordance with priorities assigned to each … project task[]." As with the term "resource," Tenrox offers no argument or explanation that can overcome the presumption that the limitations found in the dependent claims are not to be found in independent claims. The phrases at issue will be given their plain and ordinary meanings.

    D.    <u>multi-project database</u>

Tenrox contends that this phrase, found in claims 22 and 25, should be interpreted to mean "a database with data for more than one project". (Doc. 30 at 7). Enpat asserts, and Tenrox does not dispute, that the proposed construction is simply a restatement of the plain and ordinary meaning of "multi-project database". Accordingly, the Court finds no reason to construe the term, which will be given its plain and ordinary meaning.

    **DONE** and **ORDERED** in Chambers, Orlando, Florida on November 3, 2014.

                              GREGORY A. PRESNELL
                              UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party