# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ENPAT, INC.,**

      **Plaintiff,**

**v.**                                                          **Case No:   6:13-cv-948-Orl-31KRS**

**TENROX INC.,**

      **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion for Summary Judgment (Doc. 66) filed by the Defendant, Tenrox Inc. ("Tenrox"), the response in opposition (Doc. 73) filed by the Plaintiff, Enpat, Inc. ("Enpat"), and the reply (Doc. 80) filed by Tenrox.  In its motion, Tenrox seeks summary judgment that certain claims within United States Patent No. RE38,633 (the "'633 Patent") are invalid and, in the alternative, to limit any damages Enpat might recover to those accruing after the date Tenrox received formal notice of its alleged infringement.

**I.     Background**

Enpat holds U.S. Patent No. RE38,633 (the "'633 Patent"), which is a reissue of U.S. Patent No. 5,548,506 (the "'506 Patent").   The '633 Patent covers a software-based system for managing projects automatically, with a computer that uses a database to keep track of tasks, resources (such as workers and materials), and priorities for a project.   Among other duties, when the computer is notified by electronic message that, for example, a task has been completed or a resource shortage has halted work on a task, it automatically reassigns resources to achieve the most efficient completion of the project.

**II.    Legal Standard**

Section 101 of the Patent Act defines the subject matter eligible for patent protection. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has long recognized that Section 101 contains an implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable. *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. ____, ____, 133 S.Ct. 2107, 2116, 186 L.Ed. 2d 124 (2013). Laws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work, and monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws. *Alice Corp. v. CLS Bank Intern.*, ___ U.S. ____, 134 S.Ct. 2347, 2354, 189 L.Ed.2d 296 (2014). At the same time, this exclusionary principle must be carefully construed, lest it swallow all of patent law:

> At some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas. Thus an invention is not rendered ineligible for patent simply because it involves an abstract concept. Applications of such concepts to a new and useful end … remain eligible for patent protection.

*Id.* (internal quotations and citations omitted).

**III.   Analysis**

Tenrox's primary argument is that the Asserted Claims are unpatentable because they are directed toward the abstract idea of coordinating the management of a project.[1] In *Alice Corp.*,

---

[1] Tenrox makes two additional invalidity arguments that the Court finds unpersuasive. Based on *CyberSource Corp. v. Retail Decisions*, *Inc.*, 654 F.3d 1366 (Fed. Cir. 2011), Tenrox argues that the asserted claims here are unpatentable because all of their steps "can be performed in the human mind, or by a human using a pen and paper." (Doc. 66 at 21). But the

the Supreme Court described a two-part test for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. First, the court must determine whether the claims at issue are directed to one of those patent-ineligible concepts. *Id.* at 2355. If so, the court must examine the elements of each claim, both individually and as an ordered combination, to determine whether the additional elements transform the nature of the claim into a patent-eligible application. *Id*. The Supreme Court describes this second step as a search for an "inventive concept" – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself. *Id.*

### A. Are the Claims Directed to a Patent-Ineligible Idea?

Enpat asserts that Tenrox's "Project Plan Software" infringes two independent claims of the '633 Patent: Claim 12 and Claim 32 (collectively, the "Asserted Claims"). (Doc. 66-2 at 3). Claim 12, an apparatus claim, reads as follows:

> 12. Apparatus that is automatic in nature and for coordinating management of a project, comprising:
>
> an electronic messaging receiver module;
>
> a project database including allocation of at least one resource between a plurality of project tasks; and
>
> a resource levelling module with built-in triggers adapted to level allocation of said at least one resource between said plurality of project tasks in response to an electronic message received by said electronic messaging receiver.

---

*CyberSource* case (and the Supreme Court cases it was construing) involved solely mental processes, not mental-plus-pen-and-paper processes. Relying on *Parker v. Flook*, 437 U.S. 584 (1978), Tenrox also argues that the asserted claims are unpatentable because they are "merely directed toward implementing a mathematical formula on a generic computer." (Doc. 66 at 23). This is not an accurate depiction of the claims at issue.

Claim 32 is a method claim:

> 32.    A method that is automatic in nature and for coordinating the management of a project, said method comprising:
>
> receiving an electronic message;
>
> allocating at least one resource between each plurality of project tasks represented in a common database, based on said received electronic message; and
>
> leveling allocation of said at least one resource between said plurality of project tasks with built-in triggers in response to said electronic message.

Tenrox describes the claims at issue as being directed to "project management," a well-known concept.[2]  Enpat does not dispute that project management is an abstract idea, but protests that the asserted claims are not drawn to the entire concept of project management but instead to what it describes as "distributed resource leveling," which "allows users, who may utilize different computers, to send messages to a central resource leveling module," which then "utilizes built-in triggers and information in the messages to allocate at least one resource between the plurality of project tasks."   (Doc. 73 at 12-13).   According to Enpat, "distributed resource leveling" does not qualify as an abstract idea "because it is not an algorithm, a longstanding commercial practice, nor any other type of activity that has long been known" but is instead "a concrete invention, limited by the claim language, and not known before it was invented by the inventor of the '633 Patent."   But this is disingenuous.   What is described in the Asserted Claims is simply one facet of project management with a computer filling the role of the project manager, shuffling a limited supply of resources among tasks with differing priorities and prerequisites.

---

[2] In its brief, Enpat cites to the following definition of project management:   "The application of knowledge, skills, tools, and techniques to project activities to meet the project requirements."   Project Management Institute, A Guide to the Project Management Body of Knowledge (PMBOK Guide) 443 (4th ed. 2008).

- 4 -

Enpat does not point to any portion of the Asserted Claims (or the '633 Patent in general) that defines or embodies "distributed resource leveling," or even uses that term.  On the other hand, Tenrox's argument that the claimed invention relates to "project management" rather than "distributed resource leveling" is supported by the fact that the '633 Patent is titled "Automated, Electronic Network Based Project Management Server System" (Doc. 8-1 at 13) and the preamble of each Asserted Claim includes the term "for coordinating management of a project".  In addition, the patent search preceding the application consisted of searches of the categories "Project Management," "Automatic Project Management," "Electronic Mail Based Project Management," and "Groupware Project Management."  (Doc. 8-1 at 13).  No patent searches were conducted in the category of "Distributed Resource Leveling" or anything of that nature.

Further underscoring Tenrox's position, the invention is described in the Abstract as "[d]esign and implementation of an 'Auto Multi-Project Server System', which automates the tasks of Project Management Coordination, for work-group team members."  (Doc. 8-1 at 1). The Abstract describes the operation of the claimed invention as follows:

> First, the AMPS system compiles multi-project plans into a multi-project database, and tracks the ownership of projects, tasks and resources within the plans.  Second the AMPS system performs automatic checking of resource requests, if resource availability limits are exceeded then resources are re-allocated to projects based on priorities, and project plans are accordingly changed.  Third the database is processed periodically to send out reminder follow-ups and project status reports.  Fourth the databases are continuously updated based on status changes reported by work-group members. These four steps are continuously repeated enabling an automated method of multi-project management for organizational work-group team members.

(Doc. 8-1 at 1).  Clearly, the '633 Patent is directed toward project management.

### B. Do the Claims Include an Inventive Concept?

The claims at issue in *Alice Corp.* related to a computerized process for mitigating "settlement risk" – the risk that only one party to an agreed-upon financial exchange will satisfy its obligation.   134 S.Ct. at 2352.   The heart of the process involved the use of a computer system as a third-party intermediary, which would create "shadow" credit and debit records that mirrored the balances in the real-world bank accounts of the parties to the transaction.   *Id.*   The computer system/intermediary would update the shadow records in real time as transactions were entered, allowing only those transactions for which the parties' updated records indicated sufficient resources to satisfy their mutual obligations.   *Id.*   At the end of the day, the computer system/intermediary would notify the relevant financial institutions to carry out the "permitted" transactions, thereby mitigating the risk that only one party would carry out its part of the agreed-upon exchange.   *Id.*

After first determining that the claims at issue were directed to the abstract idea of intermediated settlement, the *Alice Corp.* court examined the elements of the claims to determine whether they contained an inventive concept sufficient to transform the claimed abstract idea into a patent eligible application.   Starting with the asserted method claim, the *Alice Corp.* court found that the claims did not include an inventive concept:

> Taking the claim elements separately, the function performed by the computer at each step of the process is purely conventional.   Using a computer to create and maintain "shadow" accounts amounts to electronic recordkeeping—one of the most basic functions of a computer.   The same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are well-understood, routine, conventional activities previously known to the industry. In short, each step does no more than require a generic computer to perform generic computer functions.

*Id.* at 2359 (internal quotations and citations omitted).  Similarly, the court found that considering the claim steps as an ordered combination did not add anything that was not present when the steps were considered separately.

> Viewed as a whole, petitioner's method claims simply recite the concept of intermediated settlement as performed by a generic computer.  The method claims do not, for example, purport to improve the functioning of the computer itself.  Instead, the claims at issue amount to nothing significantly more than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer.  Under our precedents, that is not enough to transform an abstract idea into a patent-eligible invention.

*Id.* at 2359-60 (internal quotations and citations omitted).

Enpat makes a number of arguments that its Asserted Claims include an inventive concept and are therefore patent-eligible under *Alice Corp*.  First, Enpat argues that if one removes the abstract idea of project management from the Asserted Claims, what remains is patentable because "project management does not appear in the claims."  (Doc. 73 at 14).  However, the Asserted Claims are clearly describing resource leveling, one of the primary components of project management.[3]  Resource leveling also qualifies as an abstract idea.  If resource leveling is removed from the Asserted Claims, nothing inventive remains.

Enpat argues that, rather than *Alice Corp.*, the instant case resembles *Diamond v. Diehr*, 450 U.S. 175, 187 (1981), in which the Supreme Court found that a process for curing synthetic rubber was patentable under Section 101 despite employing a mathematical formula and a computer in several of its steps.  Curing rubber involves a number of variables, including the

---

[3] Resource leveling is defined as "[a]ny form of network analysis in which scheduling decisions (start and finish dates) are driven by resource constraints (e.g., limited resource availability or difficult-to-manage changes in resource availability levels)."  Project Management Institute, A Guide to the Project Management Body of Knowledge (PMBOK Guide) 446 (4th ed. 2008).

thickness of the article to be molded, the temperature of the mold, and the amount of time the article remains in the mold.  *Id.* at 177.   Prior to the invention at issue in *Diehr*, a well-known equation – the Arrhenius equation – was used to calculate the length of time the item should remain in the mold, based on the mold's temperature and the item's thickness.  *Id.* at 177-78. However, because the temperature inside the mold could not be precisely measured, this process sometimes resulted in rubber that was improperly cured.  *Id.* at 178.   The claimed invention improved upon the existing process by constantly measuring the temperature inside the mold and sending the results to a computer; as the temperature changed, the computer would use the Arrhenius equation to recalculate the proper time to remove the cured item from the mold.  *Id.* at 178-79.   On appeal, the Supreme Court found that, despite its utilization of a computer and a mathematical formula, the process was patentable under Section 101:

> [T]he respondents here do not seek to patent a mathematical formula.   Instead, they seek patent protection for a process of curing synthetic rubber.   Their process admittedly employs a well-known mathematical equation, but they do not seek to pre-empt the use of that equation.   Rather, they seek only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process.   These include installing rubber in a press, closing the mold, constantly determining the temperature of the mold, constantly recalculating the appropriate cure time through the use of the formula and a digital computer, and automatically opening the press at the proper time.   Obviously, one does not need a computer to cure natural or synthetic rubber, but if the computer use incorporated in the process patent significantly lessens the possibility of "overcuring" or "undercuring," the process as a whole does not thereby become unpatentable subject matter.

*Diamond v. Diehr*, 450 U.S. 175, 187, 101 S. Ct. 1048, 1057, 67 L. Ed. 2d 155 (1981).

In the instant case, in contrast, there is no improvement to the existing abstract idea of project management (or of resource leveling).   There is no equivalent here to the continuous temperature monitoring and recalculation that made the invention at issue in *Diehr* something more than just a computerized version of the existing process.   The claimed invention here does

not, for example, use computers in a novel way to solve a problem that has plagued project planning.  It simply takes an abstract idea and computerizes it.[4]   Whether one characterizes that abstract idea as "project management" or "resource leveling," the result is the same.   The Court finds that the Asserted Claims are invalid because they claim subject matter that is not patentable under Section 101.[5]

### IV.    Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 66) filed by the Defendant, Tenrox Inc. is **GRANTED** as to the invalidity of Claim 12 and Claim 32 **AND DENIED AS MOOT** as to the limitation on damages, as set forth above.   Accordingly, the Final Pretrial Conference and Trial are canceled.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 10, 2015.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[4] The prohibition on against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment.  *Bilski v. Kappos,* 561 U.S. 593, 610 (2010).

[5] The determination that the Asserted Claims are unpatentable renders moot Tenrox's argument as to the cutoff date for damages for any infringement.